IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

DEAN C. BOYD,                                                                                         PLAINTIFF

V.                                                             CIVIL ACTION NO. 3:20-CV-420-TSL-RPM

MENARVIA NIXON GADDIS, ET AL.,                                                        DEFENDANTS

## REPORT AND RECOMMENDATION

### I.  Introduction

On June 16, 2020, plaintiff Dean C. Boyd ("Boyd"), proceeding *pro se* and *in forma pauperis*, filed a 42 U.S.C. § 1983 ("Section 1983") prisoner civil rights complaint alleging that defendants Menarvia Nixon Gaddis, MD ("Dr. Gaddis") and William Brazier, MD ("Dr. Brazier") were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment constitutional rights. Doc. [1]. He also alleges that Dr. Gaddis committed medical malpractice. *Ibid.* On January 11, 2021, Dr. Brazier filed the present summary judgment motion claiming that Boyd failed to exhaust his administrative remedies. Doc. [36]. Boyd filed a response in opposition to this motion. Doc. [38].

### II.  Facts

On June 18, 2018, Boyd fell victim to a "brutal assault" by another inmate, Doc. [11], at 1, who hit him "in the neck" with a fan motor, Doc. [35], (T. 11). Dr. Brazier was responsible for overseeing his treatment after the assault, though he did not personally treat Boyd. *Id.*, (T. 24–26, 30). Instead, nurse practitioners working under Dr. Brazier's supervision treated Boyd; Dr. Brazier observed him receiving treatment on one occasion. *Ibid.* Notwithstanding this treatment, Boyd's condition continued to deteriorate as he began to experience tingling and numbness in his right arm. *Id.*, (T. 26–27). During this time, Boyd alleges, Dr. Brazier would deliberately ignore Boyd's

1

repeated attempts to speak with him in person and purportedly "ripped up" his sick call cards because he sent in so many. *Id.*, (T. 27–28).

Nevertheless, Boyd's condition was considered sufficiently serious such that a magnetic resonance imaging scan ("MRI") was performed. *Id.*, (T. 26–27). After the MRI was performed, Boyd was referred to Dr. Gaddis, a neurosurgeon, for surgery, which was performed on September 11, 2019. Doc. [35], (T. 10, 12). While the surgery initially appeared to be successful, Boyd's health rapidly deteriorated within three weeks of the surgery; he lost feeling below his neck and his blood pressure dropped "dangerously low." *Id.*, (T. 10). A subsequent MRI revealed a "deformity" in Boyd's neck, which required a spinal fusion. *Ibid.* On February 10, 2020, Dr. Gaddis performed a second, ultimately unsuccessful, surgery that also left Boyd with an unexplained laceration on his head. *Id.*, at 10, 22. This action followed.

### III.   Standard of Review

Summary judgment is appropriate if the "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). "All facts and inferences must be viewed in the light most favorable to the non-movant." *Koerner v. CMR Constr. & Roofing, L.L.C.*, 910 F.3d 221, 227 (5th Cir. 2018) (citing *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 770 (5th Cir. 2000)). "'When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). "Only disputes

over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Since "[f]ailure to exhaust is an affirmative defense," the defendant has the "burden of demonstrating that [the plaintiff] failed to exhaust [his] administrative remedies[.]" *Wilson v. Epps*, 776 F.3d 296, 299 (5th Cir. 2015) (citing *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007)). However, at the summary judgment stage, a "failure to exhaust" affirmative defense is treated slightly differently than most other affirmative defenses. *See*, *e.g.*, *Dillon v. Rogers*, 596 F.3d 260 (5th Cir. 2010). Exhaustion of administrative remedies is a "rule of judicial administration" that is "akin to doctrines like 'abstention, finality, and ripeness . . . [which] govern the timing of federal-court decision-making.'" *Id.* at 272 (citing *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008)). Since exhaustion is a "threshold issue" that the Court "must address to determine whether litigation is being conducted in the right forum at the right time," the Court "may resolve factual disputes concerning exhaustion without the participation of a jury." *Ibid.*

### IV. Analysis

#### A. Law

Upon passing the Prison Litigation Reform Act (PLRA) of 1995, 110 Stat. 1321–71, as amended, 42 U.S.C. § 1997e, *et seq.*, Congress provided strong medicine to curb the proliferation of meritless prisoner cases in the federal courts. *Woodford v. Ngo*, 548 U.S. 81, 83, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006). The PLRA removed discretion from the district courts in deciding whether to dismiss a complaint for failure to exhaust—today, failure to exhaust mandates dismissal of a prisoner's lawsuit. *Booth v. Churner*, 532 U.S. 731, 739, 121 S.Ct. 1819, 149 L.Ed.2d 958

(2001). The PLRA applies to lawsuits brought under Section 1983, as well as those brought under "any other Federal Law," that are "about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). Furthermore, a prisoner must "properly exhaust" his administrative remedies before filing a lawsuit, *Woodford*, 548 U.S. at 90–91, 126 S.Ct. 2378, which means that "substantial compliance with administrative procedures is not enough[,]" *Bargher v. White*, 928 F.3d 439, 447 (5th Cir. 2019) (citation omitted). Finally, a prisoner must pursue his administrative remedies *even if* the grievance process cannot provide the relief sought, *Booth*, 532 U.S. at 737–39, 121 S.Ct. 1819, and cannot cure a failure to exhaust his administrative remedies *after* filing a complaint in federal court, *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). Now, the Court turns to the relevant administrative remedies in this case.

Under Miss. Code Ann. § 47–5–801, the Mississippi Department of Corrections ("MDOC") has the power to adopt administrative review procedures. Miss. Code Ann. § 47–5–801. Pursuant to this statute, the MDOC created the Administrative Remedy Program (ARP), which is enumerated in Chapter VIII of the MDOC Handbook. *See, e.g.*, *Liggins v. King*, No. CIV.A. 208–CV–227–MTP, 2009 WL 3246858, at *2 (S.D. Miss. Oct. 5, 2009). The Court initially approved the MDOC ARP in *Gates v. Collier*, GC 71–6–S–D (N.D. Miss. 1971) (Order entered Feb. 15, 1994). Effective September 19, 2010, the ARP was "changed from a three-step process to a two-step process . . . and that revised program was approved in *Gates v. Barbour*, No. 4:71–CV–6–JAD, Doc. 1242 (N.D. Miss. Aug. 19, 2010)." *Smith v. Tripplett*, No. 3:14–CV–78–LRA, 2016 WL 900574, at *2 (S.D. Miss. Mar. 8, 2016).

The MDOC's updated ARP is a "formal two-step process," *Yankton v. Epps*, 652 F. App'x 242, 245 (5th Cir. 2016) (citations omitted), that is now well-established, *see, e.g.*, *Friston v. Mills*,

4

No. 1:17–CV–329–JCG, 2020 WL 5750859, at *2 (S.D. Miss. Sept. 25, 2020).[1] First, a prisoner must make a request to enter the ARP "in writing within a 30-day period after an incident has occurred." Mississippi Department of Corrections Handbook [MDOC Handbook], at Ch. VIII. The prisoner must use the First Step Response Form ARP-2 and "present as many facts as possible to answer all [of] the questions[, including the] who, what, when, where, and how concerning the incident." *Ibid.* If the grievance is "accepted" into the ARP after being screened by the ARP Director, the MDOC has 40 days to respond to the prisoner at the first step. *See*, *e.g.*, *Johnson v. MDOC Cont. Monitor*, No. 1:18–CV–222–HSO–JCG, 2019 WL 4237761, at *4 (S.D. Miss. Sept. 6, 2019). If there is a timely response or forty days elapse without a response and the inmate is unsatisfied, he may continue to the second step by making a timely appeal to the Legal Claims Adjudicator. Doc. [36], Ex. 2. At the second step, the prisoner must "merely give a reason for [his] dissatisfaction with the previous response." MDOC Handbook, at Ch. VIII. The MDOC has 45 days, with some extensions permitted, to respond to the prisoner at the second step. *See*, *e.g.*, *Johnson*, 2019 WL 4237761, at *4. If a prisoner is unsatisfied with the second step response or lack thereof after 45 days, he may file suit in state or federal court. MDOC Handbook, at Ch. VIII.

### B.   Application

Here, Boyd filed a significant number of grievances. Most of the grievances are wholly irrelevant to the present case, including those related to Boyd's dental care (CMCF–19–1376, CMCF–18–2829), Doc. [36], Ex. 1, at 69–74; 2017 lower back surgery, (CMCF–17–2791, CMCF–18–042, CMCF–18–846), *id.*, Ex. 1, at 134–52; conditional medical release, (CMCF–22), *id.*, Ex. 1, at 1–12; wheelchair cushion, (CMCF–19–1317), *id.*, at 75–90; and "carbon dioxide poisoning," (CMCF–19–2171), *id.*, Ex. 1, at 91–112. As Boyd's *Spears* hearing testimony

---

[1] *See also Whetstone v. Brown*, No. 4:17–CV–158–JMV, 2019 WL 1029539, at *4 (N.D. Miss. Mar. 4, 2019), *aff'd*, 824 F. App'x 292 (5th Cir. 2020); *Jackson v. Hall*, 763 F. App'x 376, 377 (5th Cir. 2019).

illustrated, the above grievances clearly did not "provide administrators with a fair opportunity under the circumstances to address the problem that will later form the basis of th[is] suit[.]" *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). These grievances, therefore, are not a basis for exhaustion here.

Boyd also filed several arguably relevant grievances that were procedurally defective. First, Boyd did not reach the second step in two grievances accepted into the ARP process, including (i) CMCF–18–2105 and (ii) CMCF–18–1545. Doc. [36], Ex. 1, at 153–73. By failing to reach the second step, Boyd did not "properly exhaust" these grievances. MDOC Handbook, at Ch. VIII; *Johnson*, 2019 WL 4237761, at *4. Likewise, two grievances, MSP–20–867 and MSP–20–868, were rejected from the ARP entirely because they were filed more than 30 days after the incidents giving rise thereto. Doc. [36], Ex. 1, at 13–23. By failing to file these grievances in a timely manner, Boyd also failed to "properly exhaust" these grievances. MDOC Handbook, at Ch. VIII. Finally, several grievances were backlogged, for which Boyd received notice, and remained backlogged as of September 14, 2020. Doc. [36], Ex. 1, at 24–59. Since Boyd filed the present lawsuit on June 16, 2020, Doc. [1], and was required to exhaust his administrative remedies *before* filing the present lawsuit, these grievances were not exhausted for purposes of the present case, *Gonzalez*, 702 F.3d at 788.

Notwithstanding the above, Boyd did exhaust his administrative remedies in one of his grievances, CMCF–19–649, insofar as Dr. Brazier is concerned. Doc. [36], Ex. 1, at 113–33. At the outset, the CMCF–19–649 file submitted is out of order, contains unexplained duplicates, and backlogged grievances. As such, a more detailed explanation is required.

First, the grievance accepted into the ARP as CMCF–19–649 was entered into the MDOC computer system on January 11, 2019. Doc. [36], Ex. 1, at 115, 118. In turn, the grievances filed

6

on or after January 12, 2019 were clearly not the one accepted into the ARP as CMCF–19–649. *Id.*, Ex. 1, at 116, 122, 128–29. Next, while two grievances were filed on January 2, 2019, *id.*, Ex. 1, at 119–20, a prison administration letter to Boyd included in the file identifies a grievance labelled "Backlog #14." *Id.*, Ex. 1, at 121. One of the January 2, 2019 grievances has "#14" handwritten in the upper left corner. *Id.*, Ex. 1, at 119. As such, this grievance is the last backlogged one included in the CMCF–19–649 file. *Ibid.* As a result, the Court concludes that the other January 2, 2019 grievance is the grievance that was accepted into the ARP as CMCF–19–649. *Id.*, Ex. 1, at 120, 127. In that grievance, Boyd stated:

> Boyd complaint [sic] is that he is in excruciating pain with his right shoulder that he just had an M.R.I. on the [sic] 10th day of December, 2018, that show all [sic] the damages, but a nurse practitioner at 720 CMCF clinic told Boyd that he would allow Boyd or request for Boyd to see an off-ground specialist (surgeon) about his shoulder, when Boyd begged for the opportunity to see a surgeon because he is in merciless pain with his right shoulder[.] This is deliberate indifferent to Boyd's serious needs and inhumane (cruel and inhumane punishment[)] for Boyd to suffer day and night in excruciating pain.

> [Doc. [36], Ex. 1, at 120, 127.]

In this grievance, Boyd's specific reference to "a nurse practitioner at 720 CMCF clinic" is sufficient to provide her immediate supervisor, Dr. Brazier, "with a fair opportunity under the circumstances to address the problem that will later form the basis of the suit[.]" *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004). Indeed, "[t]he primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Cormier v. Edwards*, No. CV 17–241–SDD–EWD, 2018 WL 4053466, at *7 (M.D. La. Aug. 24, 2018) (quotation omitted). Furthermore, the fact that Dr. Brazier *responded* to Boyd at the first ARP step indicates that he was put in a position to resolve the issue complained of. *See* Doc. [36], Ex. 1, at 126. As such, while Boyd fails to specifically name Dr. Brazier, who—on the present record—appears to have managed the day-to-day operation of the CMCF medical facilities

7

during the relevant period, it is readily apparent that he is captured within the scope of CMCF–19–649. *Jones*, 549 U.S. at 217–18, 127 S.Ct. 910 (reversing Sixth Circuit decision requiring prisoner to name every defendant in "properly exhausted" prison grievance). Turning to the procedural dimension of exhaustion, CMCF–19–649 was accepted into the ARP and properly proceeded through the entire two-step process. Doc. [36], Ex. 1, at 113–33. For these reasons, the Court concludes that Boyd exhausted his deliberate indifference claim against Dr. Brazier. Dr. Brazier's argument fails.

## **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that Dr. Brazier's motion for summary judgment is denied.

## **NOTICE OF RIGHT TO APPEAL/OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a *de novo* determination by the District Court. Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which

there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

**SO ORDERED AND ADJUDGED**, this the 13th day of August 2021.

/s/ *Robert P. Myers, Jr.*
ROBERT P. MYERS, JR.
UNITED STATES MAGISTRATE JUDGE